IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA      )
                              )
            v.                )      1:08cr00272-3
                              )
MATTHEW CHRISTOPHER SAVOY     )

## MEMORANDUM OPINION AND ORDER (Amended)

Before the court is Defendant Matthew Christopher Savoy's motion for compassionate release. (Doc. 233.) The Government filed a response opposing Savoy's motion. (Doc. 241.) Savoy filed a reply. (Doc. 245.) For the reasons stated herein, the motion will be denied.

## I.  BACKGROUND

Savoy pleaded guilty to one count of conspiracy to interfere with commerce by robbery (Hobbs Act robbery) in violation of 18 U.S.C. § 1951(a) and two counts of discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Doc. 111 at 1.) In September 2009, this court sentenced him to 63 months of imprisonment on the conspiracy conviction, a mandatory consecutive 10-year term on the first § 924(c) conviction, and a mandatory consecutive 25-year term on the second § 924(c) conviction, for a total of 483 months. (Id. at 2.) The court also sentenced him to five years of supervised release. (Id. at 3.) Savoy appealed, citing ineffective assistance of counsel, and the Fourth Circuit affirmed. United States v. Savoy, 390 F. App'x

222 (4th Cir. 2010).  Savoy has since filed multiple motions pursuant to 28 U.S.C. § 2255 challenging the stacking of his § 924(c) convictions (Doc. 149) and claiming that his Hobbs Act conviction does not constitute a predicate offense under § 924(c). (Doc. 178.)  This court denied both motions (Doc. 175; Doc. 231). Savoy is currently incarcerated at FCI Butner Low and has an expected release date of November 16, 2030.  (Doc. 241 at 2.)

## II. ANALYSIS

"Federal law has long authorized courts to reduce sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the Bureau of Prisons ("BOP") under 18 U.S.C. § 3582(c)(1).  United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019).  However, Congress amended § 3582(c)(1) when it passed the First Step Act. Pertinent here, the First Step Act added a provision to § 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

2

Once this exhaustion requirement is met, a defendant must either (1) have "extraordinary and compelling reasons" for a compassionate release, or (2) be at least 70 years old, have served 30 years in prison, and have the Director of BOP determine that the defendant is not a danger to the public. Id. Additionally, a court, in considering a reduction in sentence pursuant to § 3582(c)(1)(A), must consult the sentencing factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction only if it is "consistent with [the] applicable policy statements" issued by the United States Sentencing Commission. Id. This includes United States Sentencing Guideline § 1B1.13. Section 1B1.13 essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); see also Beck, 425 F. Supp. 3d at 578. The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release, including when an inmate is suffering from a debilitating medical condition that has "substantially diminishe[d] the ability of the [inmate] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 application note 1(A)(ii).

For over a year, the Sentencing Commission has lacked a quorum and thus has not updated its policy statements on compassionate

3

release since the First Step Act was signed into law in December 2018. <u>Beck</u>, 425 F. Supp. 3d at 579 n.7. Thus, the current phrasing of § 1B1.13 addresses scenarios in which the BOP Director files a motion for compassionate release, but not situations in which an inmate files a similar motion under § 3582. As such, § 1B1.13 provides helpful guidance when considering a motion filed by an inmate, but "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." <u>Id.</u> at 579. Therefore, when considering the merits of an inmate's § 3582(c)(1)(A) motion for compassionate release, the court must consider the § 3553(a) factors but is not limited by the policy statements outlined in § 1B1.13.

The Government argues that Savoy has failed to exhaust his administrative remedies because he failed to property submit his Reduction in Sentence ("RIS") request with the Warden of Butner Low. (Doc. 241 at 8–10.) The court disagrees. The compassionate release statute requires a defendant to either "fully exhaust[] all administrative rights to appeal" the BOP's failure to bring a motion on the defendant's behalf or "the lapse of 30 days from the receipt of such a request by the warden," whichever is earlier. § 3582(c)(1)(A); <u>see also</u> <u>United States v. Alam</u>, 960 F.3d 831, 836 (6th Cir. 2020) (noting that after "their initial petition to their wardens . . . prisoners can pursue administrative review. If that

4

also comes up short (or if 30 days pass), prisoners have the option to go to federal court"). Here, Savoy submitted his first RIS request on April 24, 2020. (Doc. 245-2.) In this request, Savoy did not circle one of the form's pre-listed qualifications for a reduction in sentence but instead wrote in and circled "Extraordinary and compelling measures." (Id.) That same day, Savoy submitted a second RIS request in which he further clarified the basis for his request. (Doc. 245-3.) Savoy's requests were denied on May 1, 2020, with instructions "to circle criteria in which he would like to apply for." (Doc. 245-1.) Savoy filed the instant motion on June 25, 2020. (Doc. 233.) The compassionate release statute requires exhaustion in order to provide BOP the opportunity to decide, in the first instance, whether to grant the requested relief. See United States v. Wilson, No. CR 14-209-1, 2020 WL 1975082, at *4 (E.D. Pa. Apr. 24, 2020) ("In the First Step Act, Congress decided Bureau of Prisons should have at least the first chance to determine a prisoner's suitability for compassionate release, and gave the Bureau of Prisons thirty days to consider a request in light of more general considerations about the conditions, needs at particular facilities and the prison system as a whole, and for the just and proper treatment of the prisoner based on his background and medical history."). The BOP had that opportunity here, even if it chose to deny Savoy's request on technical grounds. And Savoy waited more than 30 days after he

5

filed his two RIS requests to file his motion with this court, as required by the statute. Accordingly, the court finds that Savoy has exhausted his administrative remedies.

Savoy makes two distinct arguments for what constitutes extraordinary and compelling reasons that merit compassionate release. First, Savoy reports that he suffers from "athletic asthma, elevated blood pressure and obesity" such that he is at a higher risk of contracting COVID-19 and developing serious complications if exposed. (Doc. 234 at 25.) Second, Savoy argues that the First Step Act's limitation of five years for consecutive mandatory minimum sentences for 18 U.S.C. § 924(c) convictions in the same indictment, which constitutes a departure from prior law that mandated a consecutive 25-year sentence for a second such conviction in the same indictment, is an extraordinary and compelling reason for a sentence reduction. (Id. at 31-33; Doc. 245 at 15-21.) After careful review of Savoy's motion and reply brief, the court finds that neither ground, standing alone or combined, constitutes an extraordinary and compelling reason for compassionate release.

### A. Medical Condition

Savoy first cites his medical condition. A review of Savoy's medical records confirms he is obese and has elevated blood

pressure.[1]  (Doc. 242-1 at 5.)  According to the Centers for Disease Control and Prevention ("CDC"), a BMI of 40 or higher is identified as increasing the risk for severe illness from COVID-19 while high blood pressure may increase such a risk.  See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Nov. 6, 2020).  Savoy is 31 years old.[2]  (Doc. 242-1 at 1.)

Much of Savoy's argument hinges on the conditions at Butner Low, where he is incarcerated, and what he describes as a "tinderbox for COVID-19."  (Doc. 234 at 30.)  The Government does not argue the point, acknowledging that during this past summer "[i]t is indisputable that Butner Low [was] suffering from a serious COVID-19 outbreak."  (Doc. 241 at 2.)  On July 10, 2020, Butner Low had 555 COVID-19 cases among inmates -- about half the overall population at the facility -- with 16 inmate deaths and 113 recoveries.  (Id. at 3; Doc. 245 at 13.)  This led the Government to concede that "the conditions at Butner Low, coupled with Savoy's medical conditions substantially diminish Savoy's

---

[1] Specifically, Savoy has a Body Mass Index ("BMI") of 44.  (Doc. 242-1 at 4.)  His most recent blood pressure test results were 154/95 in February 2020 and 121/66, 135/88, and 133/71 in March 2020.  (Id. at 2, 5.)

[2] Savoy also says he has asthma (Doc. 234 at 25; Doc. 245 at 2 n.2) but a review of his medical records does not confirm this.  Indeed, on a BOP health intake form dated February 6, 2020, the box labeled "asthma" is left unmarked.  (See Doc. 242-1 at 79.)

7

ability to provide self-care within his correctional facility. See U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). As such, Savoy has shown there is an 'extraordinary and compelling' reason for a sentence reduction." (Doc. 241 at 20.)

However, the situation at Butner has improved considerably since then. A review of BOP's COVID-19 tracker shows FCI Butner Low had only two confirmed cases, both staff members, as of November 6, 2020. See https://www.bop.gov/coronavirus/ (last accessed Nov. 6, 2020). Thus, Savoy's primary argument for compassionate release -- the influx of COVID-19 at Butner Low -- is substantially diminished.

Without the presence of COVID-19 at his facility, Savoy's medical conditions do not constitute extraordinary and compelling reasons for compassionate release. Neither obesity nor high blood pressure is a chronic condition, one "from which [the defendant] is not expected to recover." See U.S.S.G. § 1B1.13 application note 1(A)(ii). Indeed, other courts that have considered the issue have held that obesity alone is insufficient to constitute "extraordinary and compelling reasons." See e.g., United States v. Votaw, No. 2:11-CR-00514, 2020 WL 3868468, at *2 (E.D. Cal. July 9, 2020) (BMI of 37.9 not sufficient for relief); United States v. Edison, No. CR 12-225, 2020 WL 3871447, at *3 (D. Minn. July 9, 2020) (BMI of 35.4 "fails to meet the demanding standard for compassionate release"); United States v. Whitsell, No. 09-

8

CR-20236, 2020 WL 3639590, at *4 (E.D. Mich. July 6, 2020) ("Defendant's obesity by itself is not sufficient to warrant early release under the compassionate release standard."). The same is true with high blood pressure. See, e.g., United States v. Calloway, No. 3:16-CR-00121, 2020 WL 3510684, at *2 (M.D. Tenn. June 29, 2020) (denying compassionate release request from inmate with high blood pressure and high cholesterol); United States v. Adams, No. 3:16-CR-86, 2020 WL 3026458, at *1 (D. Conn. June 4, 2020) (denying compassionate release request from 59-year-old inmate whose only medical condition was high blood pressure and who was taking medication to control it).[3]

---

[3] Savoy's counsel provides lengthy string citations to cases purporting to hold otherwise. (See Doc. 234 at 28 n.57 & 30 n.58.) The cites are not on point, however, because the implication is that high blood pressure or obesity was the dispositive factor in an order granting compassionate release. A careful review of the cases, however, shows that this is rarely the situation. The court need not belabor the point, other than to say that, generally, neither obesity nor high blood pressure, alone or combined, constitutes extraordinary and compelling medical reasons absent additional serious medical concerns, age, or a major outbreak of COVID-19 at the defendant's facility. See, e.g., United States v. Hunt, 459 F. Supp. 3d 932, 934 (E.D. Mich. 2020) (congestive heart failure, diabetes, asthma, and obesity); United States v. Jenkins, 460 F. Supp. 3d 1121 (D. Colo. 2020) (60-year-old inmate with obesity and a history of strokes); United States v. Quintero, 458 F. Supp. 3d 130, 131 (W.D.N.Y. 2020) (diabetes, a "compromised immune system," obesity, and hypertension); United States v. Handy, No. 3:10-CR-128-8, 2020 WL 2487371, at *1 (D. Conn. May 14, 2020) (53-year-old with congestive heart failure, obesity, and high blood pressure and receiving immunosuppressant steroid injections at a facility with "dozens" of COVID-19 cases); United States v. Barber, No. 6:18-CR-00446, 2020 WL 2404679, at *4 (D. Or. May 12, 2020) (high blood pressure, obesity, and diabetes, with the diabetes the dispositive condition); United States v. Howard, No. 4:15-CR-00018, 2020 WL 2200855, at *3 (E.D.N.C. May 6, 2020) (52-year-old with "numerous physical and medical conditions" to include chronic obstructive pulmonary disease, Type II diabetes, obesity, kidney disease, hernias, and open wounds on his legs);

Accordingly, Savoy has not shown that his medical conditions constitute extraordinary and compelling reasons that merit compassionate release, especially with no current cases of COVID-19 amongst the inmate population at FCI Butner Low. A general fear of contracting COVID-19, while understandable, does not constitute an extraordinary and compelling reason for compassionate release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons."). And Savoy has not shown he lacks the ability "to provide self-care within the environment of a correctional facility" for his other medical conditions. See U.S.S.G. § 1B1.13 application note 1(A)(ii).

Given Savoy's age and medical condition, the availability of treatment for his medical issues at FCI Butner Low, and the current status of COVID-19 at Butner Low, and while acknowledging Savoy's undoubtedly sincere desire to avoid contracting COVID-19, the

United States v. Ardila, No. 3:03-CR-264, 2020 WL 2097736, at *2 (D. Conn. May 1, 2020) (71-year-old with diabetes, cardiovascular disease, hypertension, asthma, and obesity).

court finds that no extraordinary or compelling reasons support Savoy's compassionate release.

### B. Section 924(c)

Savoy also argues, as an alternative basis for compassionate release, that the intervening change in law regarding the "stacking" of § 924(c) convictions in an indictment also qualifies as an extraordinary and compelling reason. (See Doc. 245 at 15 ("To be clear, the primary basis that counsels for compassionate release is that Mr. Savoy could die if he contracts COVID-19 . . . . However, that is not the only reason that a sentence reduction is warranted here.").)[4] The court has carefully considered this argument, as well, and does not believe that this change in law constitutes an extraordinary and compelling reason to qualify for compassionate release.

Savoy argues that "[o]ne extraordinary and compelling reason justifying compassionate release is that [he] was previously subjected to stacked progressive sentences under § 924(c) and would be ordered to serve a substantially-reduced term of imprisonment if sentenced today." (Doc. 234 at 31.) Specifically, he contends that the mandatory minimum terms that would be imposed on his two

---

[4] Savoy's counsel relies heavily on United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478 (E.D. Pa. July 6, 2020), in making its § 924(c) argument. (Doc. 245 at 18-21.) The court notes that, while Adeyemi no doubt expressed considerable sympathy for this argument, it ultimately held, "we cannot conclude the December 2018 change in section 924(c)'s stacking law singularly constitutes an extraordinary and compelling reason warranting compassionate release." Id. at *25.

11

§ 924(c) counts would drop from 35 years (10 years for the first conviction because he discharged the firearm, and 25 years consecutive for the second conviction) to 20 years (10 years plus 10 years) if he was sentenced today. (Id. at 32.) The Government responds that the First Step Act did not authorize the relief Savoy seeks and that to grant it would contravene the Act. (Doc. 241 at 10-17.)

Some district courts have held that the First Step Act authorizes a district court to find that the Act's change in the stacking of § 924(c) convictions constitutes an extraordinary and compelling reason under § 3582(c). See, e.g., United States v. Redd, 444 F. Supp. 3d 717 (E.D. Va. 2020); United States v. Decator, 452 F. Supp. 3d 320 (D. Md. 2020); United States v. Urkevich, No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019). The reasoning appears to be two-fold. First, these courts conclude that, in the First Step Act, Congress removed the BOP's exclusive authority to determine what qualifies as an extraordinary and compelling reason, granting the court independent authority to do so. Redd, 444 F. Supp. 3d at 725. This is not controversial. See Beck, 425 F. Supp. 3d at 579 ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."). Second, using this authority, these courts conclude that the

12

disparity resulting from the changes in § 924(c) sentencing, either alone or in conjunction with other factors, qualifies as an extraordinary and compelling reason to grant a compassionate release. Redd, 444 F. Supp. 3d at 722-24.

It is this second step that is problematic. By doing so, these decisions effectively use § 3582(c)(1)(A) to work an end-run around both the laws passed by Congress and the Sentencing Guidelines. This is especially the case with § 924(c), because Congress expressly declined to make the First Step Act's sentencing changes in § 924(c) retroactive. Instead, it provided: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5221-22; see United States v. Jordan, 952 F.3d 160, 174 (4th Cir. 2020) (concluding, in line with other circuits, that the First Step Act's changes to § 924(c) are not retroactive). Savoy cannot use the "extraordinary and compelling" language from § 3582(a)(1)(A) to effectuate what Congress expressly chose not to do when it revised § 924(c).

The courts that permit the § 924(c) sentencing change to constitute an extraordinary and compelling reason for compassionate release address the retroactivity issue by concluding that Congress merely did not want the sentences of all

13

defendants sentenced under the old provision to be reviewed but authorized individualized assessments of particular defendants. See United States v. O'Bryan, No. 96-10076-03, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020) ("[I]t is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis." (citation omitted)). This argument is unpersuasive. It seems unlikely that in the very same Act in which Congress elected not to make the sentence reductions in § 924(c) retroactive it permitted courts to do that very thing in a more obscure way via changes to the compassionate release process of § 3582(c). Congress is expert at writing laws and does not "hide elephants in mouseholes." See Whitman v. Am. Trucking Associations, 531 U.S. 457, 468 (2001).

To be sure, in the First Step Act Congress expanded the role of the courts in the compassionate release process. A defendant can now directly petition the court for relief (after exhaustion), and the court has an independent basis for concluding when there are extraordinary and compelling reasons for compassionate release. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13 application note 1. But, particularly in the context of § 924(c), it is highly unlikely that this expanded role included taking steps that Congress itself chose not to take. As the Government

14

correctly notes, to hold otherwise would permit <u>any</u> defendant to move the court for compassionate release based on <u>any</u> change in law that applies to that defendant. <u>See</u> Doc. 241 at 16; <u>see also</u> <u>United States v. Arojojoye</u>, 806 F. App'x 475, 477 (7th Cir. 2020) (describing as "dubious" an argument that sentencing disparities can constitute extraordinary and compelling reasons and noting that 28 U.S.C. § 2255 presents a better vehicle for such a motion).[5] To do so would effectively infringe on Congress's right to determine which changes in statutory law are to be deemed retroactive and would vitiate the limitations Congress otherwise wrote into 28 U.S.C. § 2255.

Savoy's argument is also inconsistent with the Sentencing Guidelines. Congress still mandates that any compassionate release reduction be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C § 3582(c)(1)(A). The Guidelines' policy statement defines "extraordinary and compelling reasons" as focusing on the defendant's medical conditions, age, or family circumstances. See U.S.S.G. § 1B1.13

---

[5] Indeed, for many of the courts that have held that the change in § 924(c) sentencing constitutes an extraordinary and compelling reason for compassionate release, there is nothing in the logic of the opinions that would limit it to § 924(c) convictions. Therefore, anytime Congress changes a law that would affect in some way a defendant's sentence, it would serve as a possible ground for compassionate release. There is no indication that Congress intended the compassionate release process to become a vehicle to provide for such sentence reductions.

application note 1.  There is the "catch-all" provision,[6] but there is no basis to say that a change in sentencing terms, such as the changes in § 924(c), is in any way consistent with similar justifications enumerated in the Guidelines.  See, e.g., United States v. Fox, No. 2:14CR03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (noting that "those other extraordinary and compelling reasons should be comparable or analogous to what the [Sentencing] Commission has already articulated as criteria for compassionate release" and denying a motion based on sentencing disparity).  As the Government points out, the applicable policy statements issued by the United States Sentencing Commission do not contemplate any basis for compassionate release based on reevaluation of the severity of the original sentence.  (Doc. 241 at 12.)

Savoy's argument suffers from a further problem.  The current statutory scheme respects the continuing role of the BOP in the compassionate release process while also respecting the roles of Congress and the Sentencing Commission in sentencing.  The Director of the BOP has authority to bring a motion on behalf of a defendant.  See § 3582(c)(1)(A).  The Sentencing Commission contemplates that the Director will have made a preliminary determination that extraordinary and compelling reasons exist before doing so.  See

---

[6] See U.S.S.G. § 1B1.13 application note 1(D) ("Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

U.S.S.G. § 1B1.13 application note 4 ("The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1."). Moreover, the actual text of the "catch-all" provision states that it is the <u>Director</u> who will decide what other reasons, in addition to those enumerated, qualify as extraordinary and compelling. <u>See</u> <u>id.</u> at note 1(D) ("As determined <u>by the Director</u> <u>of the Bureau of Prisons</u>, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." (emphasis added)). But it strains reason to conclude that Congress intended for the <u>BOP</u> -- a branch of the U.S. Department of Justice -- to consider sentencing disparities as an extraordinary and compelling reason. <u>See</u> <u>Mistretta v. United States</u>, 488 U.S. 361 (1989).[7] The consideration of sentencing disparities is a quintessential judicial function. <u>See, e.g.</u>, 18 U.S.C. § 3553(a)(6). If the First Step Act were deemed to have authorized

_____

[7] <u>Mistretta</u> upheld the constitutionality of the U.S. Sentencing Commission, an independent agency housed in the Judicial Branch. While acknowledging that U.S. sentencing is not the "exclusive constitutional province of any one Branch," the Court noted that "Congress' decision to place the Commission within the Judicial Branch reflected Congress' strong feeling that sentencing has been and should remain primarily a judicial function." <u>Id.</u> at 390 (quotations omitted). Further, the <u>Mistretta</u> Court suggested that "had Congress decided to confer responsibility for promulgating sentencing guidelines on the Executive Branch, we might face the constitutional questions whether Congress unconstitutionally had assigned judicial responsibilities to the Executive or unconstitutionally had united the power to prosecute and the power to sentence within one Branch." <u>Id.</u> at 391 n.17.

17

consideration of such statutory disparities for compassionate release, the necessary question that follows is: what is the proper sentencing range for such a defendant?

The First Step Act only changes § 924(c)'s stacking of mandatory minimums; it did not limit the maximum sentences available. Moreover, a sentencing court is always required to take into account the <u>overall</u> sentence, especially when a mandatory consecutive sentence on a § 924(c) count is involved. <u>See</u> <u>Dean v. United States</u>, 137 S. Ct. 1170 (2017) (sentencing court permitted to consider the mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense). Thus, the potential changes to a sentence caused by the First Step Act's revisions to § 924(c) are not isolated to that count of conviction. Because § 3582(c)(1)(i) does not address mere inequity, but is rather a vehicle for early release, the Director of BOP would have to determine not only that the § 924(c) convictions imposed are unjust, but that the term of imprisonment already served by a defendant is "sufficient but not greater than necessary" in light of the First Step Act's changes. There is no indication that Congress intended for the BOP to wade into these difficult sentencing decisions, but that is what Savoy invites.

Of course, as noted above, the Sentencing Commission's policy statements have not been updated since the First Step Act was enacted, so the language is, in a sense, "outdated," and the courts

18

have independent authority to assess whether extraordinary and compelling reasons warrant a sentence reduction. See Beck, 425 F. Supp. 3d at 579. Just as there is no indication that Congress intended to grant BOP the authority to make such sentencing decisions, there is nothing to indicate that Congress intended to expand the courts' authority to do so. Given the joint role of the courts and the BOP in the compassionate release process, presumably both are applying the same grounds.

This is not to say that Savoy's argument that the prior stacking rules of § 924(c) were harsh, even unduly so in some cases, is without merit.[8] But there are other tools more suitable to address this concern -- § 2255 being the primary one for prisoners in federal custody to attack their sentences, which includes procedural safeguards not found in the compassionate release process, such as bars to successive motions and time limits. See 28 U.S.C. § 2255(f), (h). Because Congress knows how to say what it means, these other laws are due the respect Congress intended them.

For the above reasons, this court concludes that the sentencing reductions effectuated by the First Step Act in 18

---

[8] Savoy was sentenced to 483 months of imprisonment. (Doc. 111 at 2.) As of the time he filed the instant motion, he had served 149 months, or less than one-third, of his sentence. (Doc. 234 at 6.) As Savoy acknowledges, even if he had been sentenced under the revised § 924(c) scheme, he would have received 303 months of imprisonment and would have only served about half of his term. (Id. at 6-7.)

U.S.C. § 924(c) do not constitute an extraordinary and compelling reason for a sentence reduction.[9] Accordingly, Savoy has not offered extraordinary and compelling reasons as required by the compassionate release statute.[10]

As the court has found that Savoy has failed to demonstrate extraordinary and compelling reasons, it need not address the Government's alternative argument as to the § 3553(a) sentencing factors (Doc. 241 at 20-23) or Savoy's release plan, see 28 C.F.R.

---

[9] United States v. Chambers, 956 F.3d 667 (4th Cir. 2020), is not to the contrary. There, the defendant moved for a sentence reduction under the provision of the First Step Act that retroactively reduced the sentencing disparity between crack and powder cocaine. Id. at 670. The district court resentenced the defendant accordingly, but in doing so did not consider the intervening change in the career-offender designation brought about by United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). Id. The Fourth Circuit in Chambers vacated and remanded to the district court with instructions to recalculate Chambers' Guidelines range without the career-offender enhancement. Id. at 675. Chambers stands for the proposition that "any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing." Id. at 668. Savoy's motion is distinguishable. For one, while both the career-offender change in law in Simmons and the crack-powder disparity in the First Step Act were retroactive, the stacking of § 924(c) convictions is not. Moreover, Savoy's motion for a sentence reduction is brought under the compassionate release provision of § 3582(c)(1)(A), not § 3582(c)(1)(B), as in Chambers. Section (c)(1)(A) comes with many of the same "strictures" as § 3582(c)(2), which the Chambers court saw as a "sharp contrast" to Chambers' First Step Act motion under § 3582(c)(1)(B). See id. at 671. Specifically, while a (c)(1)(B) motion merely states that a court "may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute," both compassionate release motions under (c)(1)(A) and motions under (c)(2) permit a sentence reduction only after consideration of the § 3553(a) factors and if the reduction is consistent with the Sentencing Commission's policy statements. See 18 U.S.C. §3582(c).

[10] In so doing, the court expresses no view on the role such a change in law might play in consideration of the factors under § 3553(a) once extraordinary and compelling reasons are demonstrated.

§ 571.61(a)(2) (requiring a detailed release plan for compassionate release requests).

### C. Home Confinement

Finally, to the extent Savoy requests home confinement, that request must be denied. "The BOP has exclusive authority to determine [the] defendant's place of imprisonment, including home confinement, and the BOP's placement decisions are not reviewable by any court." United States v. Gray, NO. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (internal quotation marks omitted). As a result, the court is without jurisdiction to order BOP to place Defendant on home confinement. Id. In other words, it could not do so if it wanted to. Furthermore, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), does not provide this court with authority to order home confinement. Gray, 2020 WL 1943476, at *3. Therefore, Savoy's request for home confinement will be denied.

### III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Savoy's motion for compassionate release (Doc. 233) is DENIED to the extent predicated on the First Step Act's changes to 18 U.S.C. § 924(c) and DENIED WITHOUT PREJUDICE to the extent predicated on his medical condition.

/s/   Thomas D. Schroeder
                                        United States District Judge
November 13, 2020